2017 PA Super 244

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEVI A. GREEN | |
| Appellant | No. 1171 MDA 2016 |

Appeal from the Judgment of Sentence July 1, 2016
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000336-2015

BEFORE:  SHOGAN, J., MOULTON, J., and PLATT, J.[*]

OPINION BY MOULTON, J.:                              **FILED JULY 25, 2017**

Levi A. Green appeals from the July 1, 2016 judgment of sentence entered in the Luzerne County Court of Common Pleas following his convictions for possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, and possession of drug paraphernalia.[1]  We affirm.

On August 4, 2014, at approximately 4:00 p.m., Pennsylvania State Police Trooper Mark Conrad was conducting radar enforcement on State Route 115 in Bear Creek Township, Luzerne County, which had a speed limit of 45 miles per hour.  Trooper Conrad is assigned to the Northwest K-9 Unit

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (a)(16), and (a)(32), respectively.

and had Astor, a Pennsylvania State Police canine, with him.[2] Trooper Conrad's vehicle was "positioned across from the Bear Creek Charter School near [an] access ramp to the [Pennsylvania] Turnpike." Trial Ct. Op., 10/24/16, at 2 ("1925(a) Op.").

Trooper Conrad measured the speed of a tan-colored Dodge sedan and obtained a reading of 62 miles per hour. He then activated his emergency lights and stopped the vehicle. When Trooper Conrad approached the vehicle, he noticed that Green, the vehicle's sole occupant, appeared "overly nervous for [a] traffic violation stop," as Green's "lips and face area around his lips were trembling, and . . . a carotid artery in his neck appeared to be pounding."[3] N.T., 10/13/15, at 10-11.

Trooper Conrad recognized Green and the vehicle from two prior traffic stops.[4] In the first, Green was an occupant in a different vehicle traveling from Philadelphia. During that stop, Trooper Conrad recovered cocaine and marijuana hidden in the vehicle's engine compartment. In the second,

_____

[2] Trooper Conrad is certified to handle police canines, and Astor received re-certification as a drug detection dog in December of 2014.

[3] Green testified at the suppression hearing. Green told the trial court that he appeared nervous because Trooper Conrad had previously arrested members of his family. N.T., 10/13/15, at 44.

[4] At the suppression hearing, Green testified that Trooper Conrad also asked Green if the Trooper knew him from somewhere and Green responded that he did not know from where the Trooper would know him. N.T., 10/13/15, at 43-44.

Trooper Conrad stopped the same tan Dodge sedan driven by its owner almost three months before the current stop, and found a hypodermic needle in the vehicle.

While at the window of the vehicle,[5] Trooper Conrad asked Green for the registration and insurance documents for the vehicle. Green replied that he did not own the car and it was not registered to him. Trooper Conrad then asked Green about his travel plans. Green stated that he was returning from Philadelphia, where he had dropped off his son at approximately 9:00 a.m. Trooper Conrad returned to his vehicle and ran a criminal history check on Green, which showed that Green had a "lengthy criminal history for assault and drug offenses." 1925(a) Op. at 3. Trooper Conrad called for backup, returned to the vehicle, and asked Green to step out.

Suspicious that Green may have been trafficking drugs, Trooper Conrad asked Green to consent to a search of the vehicle.[6] When Green

_____

[5] At the suppression hearing, Green testified that when he passed Trooper Conrad's vehicle, "there were at least five . . . cars behind him," and Trooper Conrad "did not pull directly behind Green's vehicle, but rather behind the fifth car behind Green." 1925(a) Op. at 4. According to Green, Trooper Conrad approached the vehicle and asked Green "if he knew that he was speeding." *Id.* Green denied speeding. *Id.*

[6] At the suppression hearing, Green testified that after Trooper Conrad went back to his cruiser and re-approached the sedan, Trooper Conrad asked Green to step out of the vehicle and sign a document that Trooper Conrad presented as a citation for speeding. Green, however, characterized this document as a consent form to search the vehicle and refused to sign it. Green stated that Trooper Conrad asked to search Green's person and

*(Footnote Continued Next Page)*

declined, Trooper Conrad deployed Astor. Astor alerted to the odor of narcotics on both the driver and passenger sides of the vehicle. Trooper Conrad then searched the vehicle and found a folded black bag in the engine compartment next to the air filter, located on the passenger side of the vehicle. Inside the black bag, Trooper Conrad discovered three sleeves of heroin, containing 525 packets total.

On August 17, 2015, Green filed a motion to suppress, arguing that (1) Trooper Conrad had no reasonable suspicion to detain him or to deploy Astor to sniff the vehicle, and (2) Trooper Conrad lacked probable cause to search the vehicle.

On October 13, 2015, the trial court held a suppression hearing. Trooper Conrad testified on behalf of the Commonwealth, noting that, along with the factual information above, he had been employed by the Pennsylvania State Police for 10 years, had received specialized training in drug investigation and drug interdiction, had been involved in approximately 1,000 drug investigations, and had been previously qualified as an expert in drug trafficking and highway interdiction. On the Commonwealth's motion, the trial court accepted Trooper Conrad as an expert in drug trafficking and drug interdiction. Trooper Conrad testified that based on: (1) his experience, (2) his prior contacts with Green and the vehicle, (3) Green's

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

performed a pat-down search. Green described the search as offensive, alleging that Trooper Conrad grabbed Green's genitals. 1925(a) Op. at 5.

nervousness, (4) Green's return from Philadelphia, which is a drug-source city, and (5) Green's use of a third-party vehicle whose owner was not present, he believed that he had reasonable suspicion to deploy Astor.

On December 23, 2015, the trial court denied Green's motion to suppress. Green proceeded to a jury trial. On May 26, 2016, the jury convicted Green of the aforementioned charges. On July 1, 2016, the trial court sentenced Green to an aggregate term of 1 to 2 years' incarceration followed by 2 years' probation. On July 7, 2016, Green timely filed a notice of appeal.

Green raises three issues on appeal:

I.   Whether Trooper Conrad exceeded the scope of the predicate traffic stop of [Green], for allegedly speeding, and then subjected [Green] to an illegal detention that was wholly unsupported by reasonable suspicion that [Green] was engaged in criminal activity or articulable suspicion that [Green] was armed and dangerous?

II.  Whether Trooper Conrad conducted an illegal canine sniff of [Green]'s vehicle after the conclusion of the predicate traffic stop and without the requisite reasonable suspicion that [Green] was engaged in criminal activity?

III. Whether Trooper Conrad conducted an illegal warrantless search of [Green]'s car after the conclusion of the predicate traffic stop and without the requisite probable cause to conclude that [Green] was engaged in criminal activity?

Green's Br. at 4 (suggested answers omitted).

In reviewing the denial of a suppression motion, we must determine

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted).

First, Green argues that Trooper Conrad lacked reasonable suspicion to detain Green. Green asserts that Trooper Conrad's traffic stop was limited to issuing Green a citation for the speeding infraction and, therefore, Trooper Conrad illegally detained him "after the conclusion of the predicate traffic stop." Green's Br. at 10. Further, Green contends that Trooper Conrad lacked reasonable suspicion to detain Green based on the totality of the circumstances, likening his case to *Commonwealth v. Dales*, 820 A.2d 807 (Pa.Super. 2003), in which this Court found that a police officer lacked

reasonable suspicion to detain a vehicle and acted on a hunch.[7]  We disagree.

Green asserts that Trooper Conrad subjected him to an investigative detention.  The Commonwealth does not argue otherwise and we agree. **See Commonwealth v. By**, 812 A.2d 1250, 1255-56 (Pa.Super. 2002) ("Where the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest.").

Because an investigative detention "constitutes a seizure of a person and activates the protections of the Fourth Amendment[,]" **Commonwealth v. Baldwin**, 147 A.3d 1200, 1203 (Pa.Super. 2016), we must determine whether Trooper Conrad had reasonable suspicion to detain Green independent of the traffic stop.  "To constitute a valid investigative detention, the seizure must be justified by an articulable, reasonable

_____

[7] Green concedes that Trooper Conrad lawfully stopped the vehicle for an alleged speeding violation.  In its opinion, the trial court used the reasonable-suspicion standard to determine that Trooper Conrad lawfully stopped Green for a speeding violation.  1925(a) Op. at 8.  Under Pennsylvania law, a police officer may only stop a motorist for speeding if that officer possesses probable cause that the motorist was speeding. **Commonwealth v. Salter**, 121 A.3d 987, 993 (Pa.Super. 2015) ("If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. . . . because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway.").  However, it is clear that Trooper Conrad had probable cause to stop Green for a speeding violation.

suspicion that [Green] may have been engaged in criminal activity independent of that supporting h[is] initial lawful detention." ***Commonwealth v. Freeman***, 757 A.2d 903, 908 (Pa. 2000). This Court has stated the following regarding reasonable suspicion:

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa.Super. 2009) (internal citations and quotation marks omitted; alterations in original).

We conclude that Trooper Conrad possessed reasonable suspicion to detain Green on suspicion that he was trafficking drugs. When Trooper Conrad approached the vehicle and made contact with Green, he immediately noticed that Green was "overly nervous just for being stopped for a traffic violation," as Green's carotid artery was pulsating and "his lips and face area around his lips were trembling." N.T., 10/13/15, at 11-12. Upon reviewing the vehicle's documentation, Trooper Conrad discovered that the vehicle belonged to an absent third party, which, in his experience,

raised his suspicion that the vehicle was being used for drug trafficking. In addition, Green stated that he was returning from Philadelphia, a city known to Trooper Conrad as a source location for narcotics. Trooper Conrad also performed a criminal background check on Green, which showed "a lengthy criminal history for . . . assault and drug offenses." 1925(a) Op. at 3. Further, when Trooper Conrad stopped the vehicle, he remembered prior contacts with Green and with the subject vehicle. Trooper Conrad's prior contact with Green, where Green was a passenger in a vehicle stopped by Trooper Conrad, resulted in recovery of cocaine and marijuana hidden in the engine compartment of the vehicle. Trooper Conrad's prior contact with the tan Dodge sedan resulted in recovery of a hypodermic needle in the passenger compartment. Under these circumstances, we agree with the trial court that Trooper Conrad possessed reasonable suspicion that Green was trafficking drugs.

Green argues that his case is controlled by our decision in **Dales**. There, an officer stopped a vehicle for a suspected illegal tint and during that stop noticed a number of air fresheners in the vehicle and some type of "mediciney" scent in the vehicle, but not a scent that was attached, in that officer's experience, to any particular controlled substance. **Dales**, 820 A.2d at 809-10. After the officer checked the driver's information and determined that the driver was properly licensed and the vehicle registered and insured, the officer explained the nature of the window tint violation to the driver and that if the driver removed the tint, he would be in compliance the Vehicle

Code. *Id.* The officer then began asking questions about travel plans and asked the driver whether there was anything illegal in the vehicle. *Id.* at 811. The driver responded in the negative and the officer asked to search the vehicle. *Id.* The driver consented to a search and the officer recovered approximately one pound of crack cocaine from the trunk of the vehicle. *Id.* On the driver's motion, the trial court suppressed the crack cocaine found by the officer. *Id.*

We affirmed the trial court's ruling that the officer lacked reasonable suspicion to detain the driver beyond the initial traffic stop. *Id.* at 815. Specifically, we found that the officer continued with a second round of questioning after citing the driver for the violation, which required reasonable suspicion of criminal activity beyond the tint violation. Because the officer "only observed [that]: (1) there was a smell of bactine emanating from the [driver]'s vehicle; (2) [there] were several air fresheners in the vehicle, and (3) the [driver] appeared nervous[,]" we concluded that the facts available to the officer supported no more than a hunch of criminal activity and, as such, the officer lacked reasonable suspicion to detain the driver. *Id.* at 814-15. Here, in contrast, the facts and circumstances available to Trooper Conrad, independent of the speeding violation for which Trooper Conrad stopped Green, provided reasonable suspicion that Green was trafficking drugs.

Next, Green argues that Trooper Conrad lacked reasonable suspicion to deploy Astor and conduct a canine sniff. For the reasons set forth above, we disagree.

A canine sniff is a search pursuant to Article I, Section 8 of the Pennsylvania Constitution. **Commonwealth v. Rogers**, 849 A.2d 1185, 1190 (Pa. 2004).[8] However, because "this type of search . . . 'is inherently less intrusive upon an individual's privacy than other searches[,]'" our Supreme Court has held that police do not need "probable cause to conduct a canine search of a place." **Id.** (quoting **Commonwealth v. Johnston**, 530 A.2d 74, 79 (Pa. 1987)). "[R]ather, the police need merely have reasonable suspicion for believing that narcotics would be found in the place subject to the canine sniff."[9] **Id.**

In light of our conclusion that Trooper Conrad possessed reasonable suspicion that Green was trafficking drugs, we similarly conclude that Trooper Conrad had reasonable suspicion to believe that narcotics would be

_____

[8] This is different from federal law. **See, e.g., Illinois v. Caballes**, 543 U.S. 405, 409 (2005) (holding that canine sniff "performed on the exterior of respondent's car while he was lawfully seized for a traffic violation" was not "a constitutionally cognizable infringement . . . on respondent's privacy expectations" under the Fourth Amendment)

[9] When the subject of the search is a person, police must possess probable cause. **See Commonwealth v. Martin**, 626 A.2d 556, 560 (Pa. 1993).

found in the vehicle. Accordingly, Trooper Conrad was entitled to deploy Astor and conduct a canine sniff of Green's vehicle.

Next, Green argues that Trooper Conrad lacked the requisite probable cause to search the vehicle after Astor indicated the presence of drug odors. Green argues that "Trooper Conrad based his illegal warrantless search on the illegal canine sniff of [Green']'s car[,]" and that "[a] reading of [Trooper Conrad's] suppression hearing testimony indicates no independent factors that would have provided Trooper Conrad with the probable cause needed to support a warrantless search of [Green]'s vehicle. Green's Br. at 16. We disagree.

Police may search an automobile without a warrant so long as they have probable cause to do so, as an automobile search "does not require any exigency beyond the inherent mobility of a motor vehicle." *Commonwealth v. Gary*, 91 A.3d 102, 104 (Pa. 2014).[10] Our Supreme Court has concluded that Article I, Section 8 of the Pennsylvania Constitution is co-extensive with the Fourth Amendment to the United States

_____

[10] *Gary* is technically a plurality decision. Former Justice Orie Melvin did not participate in the consideration or decision of the case, which led to a decision by only six justices of the Court. Justice McCaffery wrote the opinion announcing the judgment of the Court, which Chief Justice Castille and Justice Eakin joined. Justice Todd wrote a dissent that Justice Baer joined. Justice Saylor, however, wrote a concurrence, in which he "join[ed] the lead Justices in adopting the federal automobile exception." *Gary*, 91 A.3d at 138 (Saylor, J., concurring). Therefore, *Gary* is binding precedent on this Court with respect to Pennsylvania's adoption of the federal automobile exception to the warrant requirement.

Constitution, which has long supported a warrant exception for automobile searches so long as probable cause to search exists. *See id.* at 108-13; *see also Carroll v. United States*, 267 U.S. 132 (1925) (establishing federal automobile exception to warrant requirement under Fourth Amendment). With respect to probable cause to search, our Supreme Court instructs us that

> [p]robable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. With respect to probable cause, this [C]ourt adopted a "totality of the circumstances" analysis in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921, 926 (1985) (relying on *Illinois v. Gates*, 462 U.S. 213, . . . (1983)). The totality of the circumstances test dictates that we consider all relevant facts, when deciding whether [the officer had] probable cause.

*Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (some citations and quotations omitted).

Astor indicated the presence of narcotics odors on both sides of the vehicle. Astor's indication alone was sufficient to raise Trooper Conrad's reasonable suspicion to probable cause. *See Rogers*, 849 A.2d at 1192 ("[The dog] alerted to the driver's side door; this indicated to the officers that she had detected narcotics. At that juncture, a person of reasonable caution [would believe] that an offense has been or is being committed, and reasonable suspicion ripened into probable cause.") (internal quotation omitted; some alterations in original). In light of Trooper Conrad's drug

interdiction and drug-detection experience and Astor's indication, we conclude that the facts and circumstances known to Trooper Conrad were "sufficient to warrant a person of reasonable caution in the belief that" Green was trafficking drugs.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/2017