J-A09008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
WAYNE DAVVON BEATTY :
:
Appellant : No. 1430 WDA 2017

Appeal from the Judgment of Sentence August 29, 2017
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002793-2015

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:               **FILED SEPTEMBER 19, 2018**

Wayne Davvon Beatty appeals from the judgment of sentence of eighteen to forty-eight months incarceration, followed by three years probation, imposed following his jury trial convictions for carrying a firearm without a license, possessing controlled substances with intent to deliver, possession of a controlled substance, and two summary traffic offenses.  We affirm.

The trial court set forth the underlying facts in its suppression opinion, which we adopt herein.[1]

> During the Suppression Hearing, Patrolman Benick testified relative to his interaction with [Appellant]. Patrolman Benick testified that he has been employed as a police officer since

---

[1] We rely on that set of facts as Appellant's primary issue on appeal concerns the order denying suppression.  For that issue, this Court cannot consider the evidence presented at trial.  ***In re L.J.***, 79 A.3d 1073 (Pa. 2013).

January of 2008 and has received training in drug investigation. Patrolman Benick testified that on April 28, 2015, he was traveling westbound on Route 30 near the Lincoln Mobile Trailer Park in full uniform operating a marked police vehicle. At approximately 6:24 p.m., Patrolman Benick observed a white Chevrolet Impala traveling eastbound on Route 30 in front of the trailer park. Patrolman Benick testified that for a brief moment Patrolman Benick and the Impala passed each other, and the driver looked at him with a surprised look on his face. When the vehicle pulled into the trailer park, Patrolman Benick pulled over and waited for the Impala to come out of the trailer park. Benick testified that he has made several drug arrests in Lincoln Mobile Trailer Park prior to this stop and considers the trailer park to be a high drug activity area.

Patrolman Benick testified that approximately two minutes later, the Impala came out of the trailer park, turned left onto Route 30 traveling eastbound, and failed to use a turn signal. After catching up with the Impala, Patrolman Benick also observed the Impala travel less than one car length behind another vehicle in the area of Jacktown Hill. Based on Patrolman Benick's observations, he activated his police lights and initiated a traffic stop for failure to use a turn signal, following too closely, and suspected drug activity at the trailer park. The driver of the Impala was identified as [Appellant]. Patrolman Benick inquired where [Appellant] was coming from, and [Appellant] responded that he was coming from his house in North Versailles and traveling to Derry Township. [Appellant] indicated that he did not stop anywhere else other than his house. Patrolman Benick testified that [Appellant] appeared extremely nervous, he spoke in a low, mumbled tone, he made limited eye contact, he was breathing heavily, and Patrolman Benick could see his heart rapidly beating through his shirt.

After checking [Appellant]'s criminal history, Patrolman Benick learned that [Appellant] had a recent drug arrest for possession with intent to deliver and possession of a controlled substance. Patrolman Benick requested assistance from Sergeant Kari Bauer and her K9 partner to perform an exterior sniff of [Appellant]'s vehicle. After the K9 alerted, Patrolman Benick searched [Appellant]'s vehicle without consent and discovered contraband located in the vehicle.

Order, 5/12/16, at 2-3 (citations omitted).[2]

The trial court denied Appellant's motion to suppress the evidence, and Appellant proceeded to a jury trial, where he was convicted of the aforementioned offenses and sentenced. Appellant filed a timely notice of appeal, complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement, and raises the following issues for our review:

1. The suppression court should have granted [Appellant]'s original motion to suppress.

   a. The suppression court improperly denied [Appellant]'s motion to suppress where the officer determined to stop [Appellant] based on the way [Appellant] looked at him.

   b. The suppression court improperly denied [Appellant]'s motion to suppress where Officer Benick lacked reasonable suspicion to believe that [Appellant] was involved in criminal conduct.

   c. The suppression court improperly denied [Appellant]'s motion to suppress where [Appellant]'s traffic stop was unreasonably extended to facilitate a drug search by a canine in violation of **Commonwealth v. Lopez** and **Rodriguez v. United States**.

2. The Commonwealth failed to introduce evidence sufficient to convict [Appellant] of both possession of narcotics and unlicensed possession of a firearm.

---

[2] The Honorable Christopher Feliciani heard the suppression motion and filed this opinion. The Honorable Megan Bilik-DeFazio presided over the jury trial and prepared a separate Pa.R.A.P. 1925(a) opinion.

J-A09008-18

Appellant's brief.[3]

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citation omitted). "Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court[.]" *Id*. The following additional principles are germane to Appellant's arguments.

> The investigation of possible criminal activity invariably brings police officers in contact with members of the public. Depending on the circumstances, a police-citizen encounter may implicate the liberty and privacy interests of the citizen as embodied in both the federal constitution, *see* U.S. Const. art. IV, and our state constitution, *see* Pa. Const. art. I, § 8. The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3) a custodial detention. *See Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005).

*Commonwealth v. Mackey*, 177 A.3d 221, 226–27 (Pa.Super. 2017) (footnotes omitted).

---

[3] Appellant's "questions presented" listed the issues raised in the concise statement, with an explanation of which issues were withdrawn. Appellant's brief at 6-9. For ease of presentation, we have reproduced the headings set forth within the argument section.

A traffic stop constitutes a seizure, and, depending on the vehicular offense at issue, must be supported by either reasonable suspicion or probable cause.

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

*Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa.Super. 2015)

Finally, a sniff of a vehicle's exterior is search that must be supported by reasonable suspicion, as we explained in *Commonwealth v. Green*, 168 A.3d 180 (Pa.Super. 2017).

> A canine sniff is a search pursuant to Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Rogers*, 578 Pa. 127, 849 A.2d 1185, 1190 (2004). However, because "this type of search ... 'is inherently less intrusive upon an individual's privacy than other searches[,]' " our Supreme Court has held that police do not need "probable cause to conduct a canine search of a place." *Id.* (quoting *Commonwealth v. Johnston*, 515 Pa. 454,530 A.2d 74, 79 (1987)). "[R]ather, the police need merely have reasonable suspicion for believing that narcotics would be found in the place subject to the canine sniff." *Id*.

*Id*. at 185–86 (footnote omitted).

We now sequentially examine Appellant's three separate arguments in support of reversal. First, Appellant alleges that suppression was required due to Officer Benick's admission that he intended to effectuate a traffic stop based on Appellant's behavior. Particularly, Officer Benick testified that Appellant

looked surprised when their vehicles crossed paths. Shortly thereafter, Appellant pulled into Lincoln Mobile Trailer Park, an area where drug deals were known to occur. The officer waited for Appellant to exit the park, and stopped his vehicle after seeing him commit a traffic offense. Appellant submits that suppression was required because Officer Benick intended to pull him over for the true purpose of investigating other offenses.

> Courts tend not to address the issue of whether law enforcement may use a traffic stop as a pretext to investigate another crime where the officer lacks reasonable suspicion regarding the defendant's criminal activity. *Lopez*, 609 A.2d at 182. Because of the record developed during the Suppression Hearing, [Appellant] believes the facts and procedure are ripe for the court to address the topic.
>
> If this Court allows Officer Benick's stated reason for initiating a traffic stop to stand, it would provide law enforcement "absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011) quoting *Commonwealth v. Swanger*, 307 A.2d 875 ([Pa.] 1973). The traffic stop was tainted from the moment the officer decided to stop [Appellant] based upon the officer's interpretation of a look. Everything else must be judged from that moment forward, including any potential probable cause to initiate a traffic stop.

Appellant's brief at 31-32.

We disagree. Appellant's assertion that courts have "tend[ed] not to address" whether pretextual traffic stops are permissible under the Fourth Amendment is incorrect. The courts have simply concluded that the subjective intent of police officers is irrelevant to whether a seizure is reasonable. In *Whren v. United States*, 517 U.S. 806 (1996), Whren argued that the High Court should adopt the rule that an unreasonable seizure has occurred when

a motor vehicle is stopped "unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws." *Id*. at 808. The Court first reviewed related precedents and held that even admitted pretextual seizures did not violate the Fourth Amendment:

> We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. **Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis**.

*Id*. at 813 (emphasis added).

*Whren* also rejected the proposed alternative standard, noting that the cases refusing to find Fourth Amendment violations based on subjective intent were not premised on the notion that proof of subjective intent is difficult to establish. Instead, that intent was simply irrelevant. "Why one would frame a test designed to combat pretext in such fashion that the court cannot take into account *actual and admitted pretext* is a curiosity that can only be explained by the fact that our cases have foreclosed the more sensible option." *Id*. at 814 (emphasis in original). Thus, *Whren* concluded that "For the run-of-the-mine case . . . we think there is no realistic alternative to the traditional common-law rule that probable cause justifies a search and seizure." *Id*. at 819.

Presently, Appellant does not claim that Officer Benick lacked probable cause to believe that he had committed a traffic offense warranting the seizure pursuant to *Salter*, *supra*. Nor does he offer any argument that this is anything but a run-of-the-mine case. Therefore, the trial court properly refused to grant suppression on this basis.

We now turn to Appellant's second argument, which avers that Officer Benick lacked reasonable suspicion that Appellant was engaged in drug activity.

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.

*Green*, *supra* at 184 (quoting *Commonwealth v. Basinger*, 982 A.2d 121, 125 (Pa.Super. 2009) (alterations in *Basinger*)).

The traffic code violation justified the initial seizure. The question is whether Officer Benick had reasonable suspicion to perform a search of the vehicle's exterior with a drug-sniffing dog during the course of that seizure. Our Supreme Court has held that reasonable suspicion must exist to perform

J-A09008-18

a canine search of the vehicle's exterior, and concluded that reasonable suspicion was present in that case.

> In the matter *sub judice,* Trooper Banovsky stated that when he approached the vehicle, Appellant was extremely nervous. In fact, Appellant was trembling so badly he had difficulty retrieving his license from his wallet. Also, the paperwork for Appellant's car was conflicting, incomplete and in some instances plainly fraudulent. Furthermore, while Appellant claimed that he had just departed a friend's house in Butler, he could not recall the address. Additionally, Trooper Banovsky noted open boxes of laundry supplies as well as packaging tape in the back seat of the car; Trooper Banovsky knew from his experience investigating drug offenses that these items were commonly used in the packaging and distribution of controlled substances.

***Commonwealth v. Rogers***, 849 A.2d 1185, 1189–90 (Pa. 2004).

In ***Green***, we explained that the investigating officer had reasonable suspicion for an exterior search for the following reasons:

> We conclude that Trooper Conrad possessed reasonable suspicion to detain Green on suspicion that he was trafficking drugs. When Trooper Conrad approached the vehicle and made contact with Green, he immediately noticed that Green was "overly nervous just for being stopped for a traffic violation," as Green's carotid artery was pulsating and "his lips and face area around his lips were trembling." Upon reviewing the vehicle's documentation, Trooper Conrad discovered that the vehicle belonged to an absent third party, which, in his experience, raised his suspicion that the vehicle was being used for drug trafficking. In addition, Green stated that he was returning from Philadelphia, a city known to Trooper Conrad as a source location for narcotics. Trooper Conrad also performed a criminal background check on Green, which showed "a lengthy criminal history for ... assault and drug offenses." Further, when Trooper Conrad stopped the vehicle, he remembered prior contacts with Green and with the subject vehicle. Trooper Conrad's prior contact with Green, where Green was a passenger in a vehicle stopped by Trooper Conrad, resulted in recovery of cocaine and marijuana hidden in the engine compartment of the vehicle. Trooper Conrad's prior contact with the tan Dodge sedan resulted in recovery of a hypodermic needle

- 9 -

in the passenger compartment. Under these circumstances, we agree with the trial court that Trooper Conrad possessed reasonable suspicion that Green was trafficking drugs.

*Green*, *supra* at 184–85 (citations omitted).

This case shares many of these characteristics. Appellant "appeared extremely nervous, he spoke in a low, mumbled tone, he made limited eye contact, he was breathing heavily, and Patrolman Benick could see his heart rapidly beating through his shirt." Order, 5/12/16, at 3. Furthermore, Appellant stated that he had not stopped anywhere while traveling from his house to his destination, which conflicted with Officer Benick's observations. In *Green*, we deemed it relevant that (1) Green was returning from Philadelphia, a "city known to [the officer] as a source location for narcotics," and (2) that Green had a lengthy criminal history for assault and drug offenses.

In this case, Appellant drove into the Lincoln Mobile trailer park, stayed approximately two minutes, then departed. That location was known to Officer Benick as a high drug activity area. If it is permissible for the trial court to consider a defendant who is returning from Philadelphia to be returning from a location that is a 'source location for narcotics,' as we stated in *Green*, then Appellant's visiting a trailer park with a history of drug activity immediately prior to the traffic stop is of much stronger inferential value, especially since Officer Benick had personally made several arrests in that

park.[4]   Additionally, Officer Benick checked Appellant's criminal history and learned that Appellant had been recently arrested for possession with intent to deliver.

This case does not involve any kind of paraphernalia that indicated distribution of drugs, as in *Rogers*, nor does it involve fraudulent and/or suspicious documentation as in *Rogers* and *Green*.   Of course, each case must be considered based on its facts, and we are satisfied that under the totality of the circumstances as discussed *supra*, Officer Benick had reasonable suspicion that Appellant was involved in drug activity.

Finally, Appellant cites *Rodriguez v. United States*, 135 S.Ct. 1609 (2015), and *Commonwealth v. Lopez*, 609 A.2d 177 (Pa.Super. 1992).   In *Rodriguez*, the United States Supreme Court held that a police officer may not extend an otherwise-completed traffic stop in order to conduct a drug dog sniff.   *Rodriguez* held that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id*. at 1614.   While *Rodriguez* involves the use of a drug-sniffing dog, its holding is largely irrelevant to the instant case because the Fourth Amendment permits a dog sniff without any level of suspicion.   *Id*. at 1612 (citing *Illinois*

---

[4] Appellant noted that there are innocent explanations for his short stay, as Officer Benick did not see where he went in the park.  However; "Potential innocent explanations for [the citizen]'s conduct do not negate the reasonableness of [the officer]'s suspicion of criminal activity." *Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa.Super. 2014).

*v. Caballes,* 543 U.S. 405 (2005)). Thus, ***Rodriguez*** is largely inapposite, because the High Court was addressing only whether a completed seizure could be prolonged for purposes of bringing a drug-sniffing dog on scene. Indeed, ***Rodriguez*** remanded the case to determine whether the dog sniff was independently supported by reasonable suspicion. ***Id***. at 1616.

Likewise, ***Lopez*** deals with whether a seizure was justified beyond the reason for the initial stop. Thus, the case addressed "the propriety of the **subsequent** detention and investigation[.]" ***Lopez***, *supra* at 181 (emphasis added). "Absent reasonable grounds to suspect an illegal transaction in drugs or other serious crime, the officer had no legitimate reason for detaining Lopez or for pursuing any further investigation of him." ***Id***. at 182.

As discussed *supra*, we have determined that there was reasonable suspicion to suspect drug activity. Therefore, the continued detention for further investigation was justified. This is not a case, as in ***Lopez***, where the justification for the seizure had dissipated. Therefore, we reject Appellant's arguments and affirm the suppression order.

Appellant's second issue contends that the Commonwealth failed to present sufficient evidence to support the convictions for the possessory offenses respecting the drugs and gun. Appellant challenges only the element of possession. When reviewing the sufficiency of the evidence, we examine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the

above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

**Commonwealth v. Cornelius**, 180 A.3d 1256, 1259 (Pa.Super. 2018)

(quoting **Commonwealth v. Gonzalez**, 109 A.3d 711, 716 (Pa.Super. 2015)

(alterations in **Gonzalez**)).

Since Appellant did not possess the drugs or gun on his person, the Commonwealth was required to establish constructive possession, *i.e.* that Appellant had both the ability and intent to exercise control over the items. **See Commonwealth v. Dargan**, 897 A.2d 496, 503, 504 (Pa.Super. 2006). We explained in **Commonwealth v. Brown**, 48 A.3d 426 (Pa.Super. 2012), that

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id*. at 430 (internal quotation marks and citations omitted). Mere presence is insufficient as a matter of law to establish possession. **Commonwealth v. Parrish**, --- A.3d ----, 2018 WL 2995314 (Pa.Super. June 15, 2018) (holding

- 13 -

Commonwealth failed to establish constructive possession of items recovered from the front of the vehicle, where defendant was seated in back driver's side of vehicle).

We now incorporate the trial court's recitation of the factual history regarding the subsequent search of Appellant's vehicle, as testified to at trial.

> Sergeant Bauer subsequently arrived at the scene. She instructed [Appellant] to close the windows on the Impala so that the K9, Vegas, could perform an exterior sniff. Vegas subsequently walked around the Impala and began sniffing and scratching at it. [Appellant] was advised by Officer Benick to exit the vehicle so that he could perform a search. Once [Appellant] stepped outside of the vehicle, Officer Benick performed a pat down of [Appellant] with his consent. Cash was found in [Appellant]'s pocket. [Appellant] also informed Sergeant Bauer that there may be a marijuana blunt roach in the vehicle. Subsequently, Officer Benick performed a search of the vehicle. Officer Benick discovered a black computer bag in the trunk of the car. In the bag, Officer Benick found three (3) clear plastic bags containing a white rock substance. This substance was later identified as cocaine. Officer Benick also found a weapon inside the computer bag with nine (9) live rounds in its chamber. In addition, he found a computer, tablet, and Nokia cell phone. It was later discovered that [Appellant] was listed as the owner of the tablet. . . .
>
> [Appellant] was thereafter placed under arrest and advised of his ***Miranda*** [r]ights. [Appellant] never indicated that he did not wish to speak with Officer Benick. Officer Benick asked [Appellant] if he could identify the substance that was found in his vehicle. [Appellant] replied that there was "a little bit of everything." Officer Benick also asked if [Appellant] could identify the owner of the firearm. [Appellant] would not identify the owner of the firearm because he said he does not tell on people. Officer Benick advised [Appellant] that the firearm was considered to be his since he is the owner of the vehicle and he was in possession of it. [Appellant] replied that he was aware of this. . . .
>
>      . . . .

- 14 -

Sergeant Bauer instructed [Appellant] to close the windows on his vehicle prior to having Vegas perform an exterior scan of the vehicle. Once Vegas began his scan, he immediately jumped and hit on the seam of [Appellant]'s driver's side door. Vegas also jumped and hit the passenger side window of [Appellant]'s vehicle. Vegas' actions indicated that the odor of a narcotic was inside the vehicle. Officer Benick then began his search of the vehicle. Sergeant Bauer stood with [Appellant] while Officer Benick performed the search. She testified that [Appellant] appeared to be very nervous when Officer Benick got to the trunk of the vehicle. Sergeant Bauer assisted Officer Benick with the search of the vehicle's trunk.

Trial Court Opinion, 11/16/17, at 3-5 (footnotes and citations omitted).

We find that this is not a case of mere presence, and that the evidence presented entitled the jury to find that Appellant constructively possessed the drugs and gun. Those items were found in the trunk of a vehicle that Appellant was driving and which was registered to him. **See Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa.Super. 1996) (items found in hatch area of vehicle which was "usually accessible only to the operator of a vehicle"). Additional circumstantial evidence linked Appellant to the items. Within the bag containing the contraband was an electronic tablet, with Appellant listed as the owner when the device was powered on. When questioned by Officer Benick about the controlled substances, Appellant said, "You know what you got." N.T. Jury Trial, 5/1-3/17, at 94. With respect to the firearm, Appellant declined to name the owner, stating, "I ain't saying, I don't tell on people." **Id**. This evidence establishes that Appellant knew of the items' existence. Finally, the canine's handler testified that Appellant became nervous when Officer Benick started to search the trunk. When viewing the inferences drawn

- 15 -

from this evidence in the light most favorable to the Commonwealth, we find that the jury's finding of constructive possession was supported.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2018