J-S16007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PRESTON MEKAL OWENS | : | No. 2170 EDA 2022 |

Appeal from the Order Entered August 22, 2022
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0002592-2021

BEFORE:  DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 5, 2023**

The Commonwealth of Pennsylvania appeals from the trial court's August 22, 2022 order suppressing evidence derived from a warrant search of a vehicle rented to Appellee, Preston Mekal Owens ("Appellee").[1] At issue is whether the police possessed reasonable suspicion to conduct the investigation that led to the warrant. The trial court found that the police lacked reasonable suspicion. After careful review, we affirm.

On June 24, 2021, Pennsylvania State Trooper Dario Korpita stopped a grey Jeep, driven by Appellee, on Interstate 80 in Monroe County. As discussed in greater detail *infra*, after the conclusion of the traffic stop, Trooper Korpita questioned Appellee and his passenger, Naja Hicks, and held

---

[1] The Commonwealth certified in its notice of appeal that the order in question would terminate or substantially handicap its prosecution of Appellee pursuant to Pa.R.A.P. 311(d). Accordingly, we have jurisdiction.

the pair for over an hour to conduct a canine sniff search of the vehicle.[2] During the sniff search, the canine officer alerted for the presence of illicit substances in the Jeep. A subsequent warrant search yielded a handgun, illicit drugs, and drug paraphernalia. In a written statement, Appellee took responsibility for the Jeep's contents. As a result, the Commonwealth charged Appellee with Firearms Not to be Carried Without a License, Possession With Intent to Deliver, Possession of a Controlled Substance, Possession of a Small Amount of Mari[j]uana, Possession of Drug Paraphernalia, and Driving While Suspended.[3]

On January 14, 2022, Appellee filed a pretrial motion seeking to suppress his inculpatory statement and all evidence derived from the vehicle search. Appellee alleged that Trooper Korpita lacked the reasonable suspicion necessary to continue his questioning after the completion of the traffic stop, to detain the Jeep's occupants, and to conduct the sniff search.

On March 21, 2022, and July 14, 2022, the trial court held a hearing on Appellee's motion. The Commonwealth presented testimony from Trooper Korpita, played the motor vehicle recording ("MVR") for the court, and entered the MVR into evidence. Appellee did not present evidence at the hearing.

On July 27, 2022, the trial court convened another hearing to announce its decision to grant Appellee's suppression motion. The court determined that

---

[2] Appellee and Hicks were joined in the Jeep by Khalil Jackson.

[3] 18 Pa.C.S. § 6106(a)(1); 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(31), (a)(32); and 75 Pa.C.S. § 1543(a), respectively.

Trooper Korpita subjected Appellee to an illegal detention when he continued his investigation after the conclusion of the traffic stop. As a result, the court suppressed Appellee's inculpatory statement and the evidence derived from the warrant search as fruit of an illegal detention.

On August 22, 2022, the trial court filed an order consistent with its July 27th pronouncement. The Commonwealth filed a timely notice of appeal, and both it and the trial court complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth challenges the trial court's finding that Trooper Korpita lacked reasonable suspicion to continue his investigation after the conclusion of the traffic stop. Commonwealth's Br. at 4-5.[4] The Commonwealth does not dispute that the evidence found in the warrant search and Appellee's inculpatory statement derived from Trooper Korpita's investigatory detention.

---

[4] The Commonwealth also raises challenges to the trial court's (1) alleged finding that the traffic stop was illegal, and (2) determination that Trooper Korpita's testimony lacked credibility regarding his reasoning for conducting the underlying traffic stop. Commonwealth's Br. at 3-4, 13-18.

Although the trial court's on-the-record ruling and subsequent written order did not specifically address these issues, our reading of the order in the context of the broader record makes clear that the court suppressed the underlying evidence based on a finding that Trooper Korpita lacked reasonable suspicion to extend the traffic stop to conduct the canine sniff search. *See* N.T. Hr'g, 7/27/22, at 5 (recognizing the legality of the stop); Trial Ct. Op., 10/7/22, at 4 ("Although we find that the Trooper's initial stop of [Appellee] was legal, we find that the extension of the stop was not."). Thus, we need not address the Commonwealth's arguments premised on its erroneous conclusion that the trial court found that the traffic stop was illegal.

- 3 -

On review of a grant of a suppression motion, our review "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Stem**, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003). "[H]owever, we maintain *de novo* review over the suppression court's legal conclusions." **Commonwealth v. Brown**, 996 A.2d 473, 476 (Pa. 2010).

We categorize police interactions with members of the public into three general tiers of increasing intrusiveness, which require increasing levels of suspicion that a defendant is engaging in criminal activity: (1) mere encounters, which require no suspicion; (2) investigative detentions, which require reasonable suspicion; and (3) custodial detentions, which require probable cause. **Commonwealth v. Collins**, 950 A.2d 1041, 1046 (Pa. Super. 2008).

"Where the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest." **Commonwealth v. Green**, 168 A.3d 180, 184 (Pa. Super. 2017) (citation omitted). Thus, at the point where the purpose

- 4 -

of the initial traffic stop has concluded, the police must possess reasonable suspicion that criminal activity is occurring in order to continue the detention. ***Commonwealth v. Reppert***, 814 A.2d 1196, 1202 (Pa. Super. 2002). ***See also Rodriguez v. U.S.***, 575 U.S. 348, 354-55 (2015).

Demonstrating reasonable suspicion requires that the detaining officer "articulate something more than an inchoate and unparticularized suspicion or hunch" that the defendant has engaged in criminal activity ***Commonwealth v. Jefferson***, 256 A.3d 1242, 1248 (Pa. Super. 2021) (citation omitted). In determining whether the Commonwealth has met this burden, courts must make an objective inquiry into whether, based on "the facts available to [the] police at the moment of intrusion[,]" a person "of reasonable caution" would believe that the defendant has engaged in criminal activity. ***Id.*** (citation omitted). At the moment a mere encounter becomes an investigative detention, police must already have the requisite reasonable suspicion that the defendant engaged in criminal activity to support that detention. ***Commonwealth v. Mackey***, 177 A.3d 221, 232 (Pa. Super. 2017). "Reasonable suspicion cannot be based on information discovered after the detention has begun." ***Id.***

The evidence presented at the March 21 and July 14, 2022 suppression hearings established that Trooper Korpita initiated the traffic stop because Appellee was driving at excessive speed and following another car too closely. N.T. Hr'g, 3/21/22, at 4-5. When he approached the vehicle, Trooper Korpita found Appellee smoking a cigar. ***Id.*** at 8-9. He also saw several backpacks

and duffel bags in the back of the Jeep. *Id.* at 10. Trooper Korpita determined that the vehicle was a rental and Appellee's license was suspended. *Id.* at 5, 12.

During the stop, Trooper Korpita asked about the group's travel itinerary. Appellee stated that the group had left Georgia early that morning, and were headed for Brooklyn, New York. *Id.* at 13-15. Appellee initially stated that the group was going to two graduation ceremonies, one for a niece graduating from 8th grade, the other from college. *Id.* Appellee then amended his statement, explaining that his older niece was graduating from high school and would soon be attending college. *Id.*; MVR at 8:47-9:08.

Approximately 8 minutes into the traffic stop, Trooper Korpita informed Appellee that if Hicks was licensed and able to drive, he would release the group. MVR at 10:06-10:26; 11:30.[5] To determine if Hicks had a valid license, Trooper Korpita asked Appellee for Hicks' information. *Id.* at 10:06-10:26. After entering Hicks' information into his computer, Trooper Korpita returned to the Jeep and confirmed with Hicks that she was capable of driving. *Id.* at 11:38-12:09. At this point, the initial purpose of the traffic stop was satisfied and the investigative detention had ended.

Notwithstanding the completion of the traffic stop, Trooper Korpita continued to question Hicks about the group's itinerary and conducted another round of questioning of Appellee. The Trooper also held the group for over an

---

[5] Trooper Korpita first engaged the Jeep at approximately the 2:00 mark of the MVR.

hour while awaiting a canine unit and subjected the Jeep to a canine sniff search. During the additional questioning, Hicks told Trooper Korpita that they were traveling to New York, New York. Hr'g, 3/21/22, at 18-20. Based on this information, and because Appellee had said they were traveling to Brooklyn, New York, Trooper Korpita concluded there was a discrepancy in the travel itineraries that was "significant." Hr'g, 3/21/22, at 18-20. Trooper Korpita only learned of this alleged discrepancy after the traffic stop had ended. *Id.*

The trial court found that once Trooper Korpita determined that Hicks was able to drive, the traffic stop had been completed. N.T. Hr'g, 7/27/22, at 7. Trooper Korpita, therefore, required reasonable suspicion of criminal activity to continue his questioning. The court found that Trooper Korpita relied on the following factors to continue the detention: (1) the car was rented in Appellee's mother's name, who was not present in the vehicle; (2) Appellee was smoking in the rental; (3) Appellee did not know passenger's exact age; (4) Appellee was driving with an expired license; and (5) Appellee and Hicks gave "differing" travel itineraries. Trial Ct. Op., 10/7/22, at 5; N.T. Hr'g, 7/27/22, at 5-7. The trial court concluded that these factors did not rise to the level that Trooper Korpita had a reasonable suspicion that Appellee had committed a crime. Rather, these factors at best, demonstrated a unparticularized suspicion or hunch that Appellee was engaged in criminal activity. As a result, the court suppressed all evidence derived in the

subsequent warrant search and Appellee's inculpatory statement as fruit of an illegal detention.

The record supports the trial court's factual findings and we discern no error in its conclusion that Trooper Korpita lacked a reasonable suspicion that Appellee was engaged in criminal activity. We agree with the legal conclusion of the trial court that smoking a cigar, driving a rental car, and not knowing a passenger's exact age did not create a reasonable suspicion that Appellee was engaged in criminal activity.[6]

Because Trooper Korpita lacked sufficient facts to warrant a reasonable officer to believe that Appellee was engaged in criminal activity, the suppression court properly suppressed the evidence resulting from the detention. We affirm.

Order affirmed.

_____

[6] Trooper Korpita stated at the suppression hearings that he called out the canine unit because of differing travel itineraries and the odor of marijuana in the vehicle. Hr'g, 3/21/22, at 19. However, Trooper Korpita first stated that he smelled marijuana only after the canine unit arrived. Hr'g 7/14/22, at 18. The trial court did not consider the odor of marijuana as a factor in its reasonable suspicion analysis. N.T. Hr'g, 7/27/22, at 5. Moreover, because the traffic stop had ended, and Trooper Korpita did not learn of what he characterized as differing travel itineraries until after he had begun his second investigative detention, his learning of "conflicting itineraries" is irrelevant to the "reasonable suspicion" analysis. Hr'g, 3/21/22, at 18-20.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/5/2023