J-A05016-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THERESA DIANE SCOTT | : | |
| | : | |
| Appellant | : | No. 111 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 10, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003153-2017

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.: FILED JULY 08, 2020

Theresa Diane Scott appeals her December 10, 2018 judgment of sentence that was imposed after a jury found her guilty of criminal conspiracy to commit possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, and possession of drug paraphernalia. After careful review, we affirm.

The underlying events of this case began on the afternoon of August 3, 2016, when Appellant was involved in a two-vehicle accident on Route 60 in Robinson Township, Pennsylvania. Officers responded to the scene and learned that Appellant had been attempting to reach the Comfort Inn located at the site of the accident when the collision occurred. During questioning, Appellant indicated that she "had a room" in the establishment with an

_____

[*] Retired Senior Judge assigned to the Superior Court.

individual named David Lee, who had also been a passenger in Appellant's vehicle at the time of the crash. See N.T. Suppression Hearing, 10/12/17, at 16-17. The Comfort Inn was well-known to law enforcement. In particular, officers identified the third floor of the hotel as a "hot spot" for drug-related activities. Id. at 27-28.

The officers also quickly learned that Mr. Lee had six prior arrests and convictions for drug-related offenses, as well as for firearms violations. They also discovered an active warrant for Mr. Lee's arrest, and took him into custody.[1] Incident to his arrest, the police found $2,008 in U.S. currency and two cell phones on Mr. Lee's person. He claimed Appellant was his cousin, and that he was at the hotel to visit her. Id. at 6.

The officers also questioned Appellant concerning her relationship with Mr. Lee. She did not claim him as a relation, but asserted that she planned to have a "romantic encounter" with him in their shared hotel room. Id. at 15-16. She also said that she was sharing the room with "her boyfriend." Id. at 29. The officers revealed their mounting suspicions and asked Appellant to assist in the investigation. Instead, Appellant suddenly left the scene of the accident and "hurried" to the Comfort Inn by crossing the highway.[2] Id. An

---

[1] It is unclear from the certified record what the nature of Mr. Lee's outstanding warrant was, except that it related to Bellevue, Pennsylvania.

[2] At trial, the Commonwealth adduced testimony that Appellant ceased cooperating after receiving a phone call from Mr. Lee while he was detained in the back a police car. See N.T. Trial, 9/18/18, at 73-74. The Commonwealth adduced no such testimony at the suppression hearing.

officer tailed Appellant but stopped short of following her into the Comfort Inn. Appellant emerged approximately ten minutes later, explaining that she had been "using the bathroom." Id. at 7-8. Upon her return to the scene, officers reported Appellant acting "nervous" and "frightened." Id. at 16. After speaking with the hotel staff, the officers confirmed Appellant's connection to Room 315. The staff also informed the officers that Mr. Lee was a frequent guest at the hotel because he received a discounted rate.

At this point, the officers called for the assistance of a narcotics-detecting canine, which alerted on the door of Appellant's hotel room while in the third-floor hallway of the Comfort Inn. Based upon this alert, the officers applied for and received a search warrant. The execution of that warrant yielded approximately 46 grams of crack cocaine, an electronic scale, several pairs of rubber gloves, and plastic bags.

By criminal information, the Commonwealth charged Appellant with PWID, criminal conspiracy to commit PWID, possession of a controlled substance, and possession of drug paraphernalia. After pleading not guilty, Appellant filed a suppression motion seeking to exclude the fruits of the search of her hotel room by arguing that the officers lacked the necessary reasonable suspicion[3] to utilize a "canine sniff" in the hotel hallway. Following a hearing

_____

[3] "Reasonable suspicion" exists "only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his own experience, that criminal activity was afoot and that the person he stopped

and based upon testimony from multiple officers, the trial court denied Appellant's suppression motion. Ultimately, the jury found Appellant guilty of the aforementioned offenses.[4] The trial court sentenced Appellant to an aggregate term of six to twelve months of incarceration and three years of probation on all counts.

Appellant filed a timely notice of appeal. Both the trial court and Appellant timely complied with their obligations under Pa.R.A.P. 1925.

Appellant has raised the following issues for our consideration:

I. Did the [suppression] court err when it denied Appellant's motion to suppress evidence because the police officer's use of a canine constituted a search in violation of [Appellant's] rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

II. Did the [suppression] court err in finding that probable cause existed to justify the issuance of the search warrant in light of the fact that the evidence derived from the illegal canine sniff, when removed from the affidavit, renders it insufficient as a matter of law?

III. Whether the evidence was insufficient to support Appellant's convictions for possession of a controlled substance and possession of drug paraphernalia because the Commonwealth failed to prove beyond a reasonable doubt that Appellant knowingly or intentionally possessed a controlled or counterfeit substance?

Appellant's brief at 5 (cleaned up).

_____

was involved in that activity." Commonwealth v. Gould, 187 A.3d 927, 935 (Pa.Super. 2018).

[4] The jury found Appellant not guilty of PWID.

Appellant's first claim asserts that the trial court erred in denying her pre-trial suppression motion because the officers lacked the suspicion necessary to support the use of the drug-sniffing dog. Id. at 22-27. Our standard and scope of review in this context are as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the [trial] court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the [trial] court, we may consider only the evidence of the Commonwealth and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the [trial] court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the [trial] court turns on allegations of legal error, the [trial] court's legal conclusions are not binding on the appellate court, whose duty it is to determine if the [trial] court properly applied the law to the facts. Thus, the conclusions of law of the trial court are subject to plenary review.

Commonwealth v. Wright, 224 A.3d 1104, 1108 (Pa.Super. 2019).

As a threshold matter, any defendant seeking to suppress a search and seizure must establish that she has a "legally cognizable expectation of privacy in the premises which were searched." Id. For the first time on appeal, the Commonwealth claims that Appellant had no reasonable expectation of privacy in the hallway of the hotel. See Commonwealth's brief at 11-13 (arguing Appellant had no expectation of privacy in the hotel hallway because that space was "traveled by many people"). However, the Commonwealth failed to raise this argument in the trial court.

Under Pennsylvania law, the Commonwealth can concede the issue of a defendant's reasonable expectation of privacy and elect to defend police conduct on other grounds. See Commonwealth v. Enimpah, 106 A.3d 695, 701 (Pa. 2014) ("The Commonwealth may concede the privacy interest, choosing to contest only the legality of police conduct; if it does so, the defendant's 'reasonable expectation of privacy' need not be established."). This is precisely what the Commonwealth did in Appellant's case. At the suppression hearing, counsel for the Commonwealth explicitly conceded that Appellant had a reasonable expectation of privacy in the relevant premises of the hotel. See N.T. Suppression Hearing, 10/12/17, at 32 ("[S]he does have [an] expectation of privacy, I would concede in a hotel, as long as she is paying for that space . . . ."). Thus, we will review Appellant's claims under the assumption that she had an expectation of privacy in the hotel hallway.[5]

_____

[5]  In Pennsylvania, a guest in a hotel room has a legitimate expectation of privacy in the room during the rental period. See Commonwealth v. Brundidge, 620 A.2d 1115, 1118 (Pa. 1993). The Commonwealth's belated argument identifies an area of law that is largely untrod in Pennsylvania, i.e., the extent of an individual's expectation of privacy in the common areas of a hotel. Properly preserved, this would be a potentially dispositive issue of first impression. Due to the Commonwealth's concession, we express no opinion on the arguable merits of these arguments. But see Commonwealth v. Reed, 851 A.2d 958, 962 (Pa.Super. 2004) (holding defendant-tenant had no expectation of privacy in an apartment building's second-floor hallway), Commonwealth v. Murphy, 795 A.2d 997, 1004 (Pa.Super. 2002) (holding defendant-tenant had no expectation of privacy in storage room also accessed by "[t]he residents of twenty-two separate apartments, the employees of the apartment complex management company and the utility companies").

Appellant's first claim implicates the protections of both the U.S. Constitution and the Pennsylvania Constitution. See Appellant's brief at 22-27 (citing U.S. CONST., Amend. IV, PA. CONST., Art. I, § 8).[6] In relevant part, these foundational laws "protect individuals from unreasonable searches and seizures." Commonwealth v. By, 812 A.2d 1250, 1254 (Pa.Super. 2002). More specifically for the purposes of Appellant's case, both passages protect "zones where an individual enjoys a reasonable expectation of privacy." Commonwealth v. Viall, 890 A.2d 419, 422 (Pa.Super. 2005). As noted above, the Commonwealth has conceded that Appellant had an expectation of privacy in the hotel hallway where the subject search occurred.

Although Appellant invoked both the U.S. Constitution and the Pennsylvania Constitution provisions in her initial suppression motion, she did not present a bifurcated argument at the suppression hearing. See N.T. Suppression Hearing, 10/12/17, at 31-36. Rather, Appellant presented her suppression argument to the trial court as unitary in nature, and the trial court evaluated Appellant's claim as such. See, e.g., N.T. Suppression Hearing,

_____

[6] While Appellant's brief cites the Fourteenth Amendment to the U.S. Constitution, no discussion of that passage appears in the argument section of Appellant's brief. To the extent that Appellant intended to raise any arguments arising under the Fourteenth Amendment, such claims are waived. See Pa.R.A.P. 2119(a); Commonwealth v. Johnson, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

10/12/17, at 35, Trial Court Opinion, 6/24/19, at 5-8.  Prior to filing a brief in this case, the certified record is devoid of any objection on this point.

For the first time in her brief, Appellant now argues that the trial court erred by failing to conduct a bifurcated review of Appellant's constitutional claims.  See Appellant's brief at 23-24.  In relevant part, she claims that the trial court should have evaluated her putative Fourth Amendment claims under the heightened legal standard of probable cause:[7]

> The trial court made no distinction between Appellant's asserted claims that the canine sniff was illegal under the Fourth Amendment to the U.S. Constitution.  Importantly, Appellant preserved both claims in order to invoke the dual protections of the state and federal provisions regarding searches and seizures.  At no point in time did the trial court make any reference to Appellant's rights under the Fourth Amendment—had it explored this asserted claim, the trial court would have found that Appellant's constitutional rights under the U.S. Constitution with respect to canine searches had been violated.

Id (cleaned up; internal citations omitted).

As an initial matter, we find no merit in Appellant's suggestion that the trial court failed to consider her arguments arising under the Fourth Amendment.  As noted above, Appellant herself presented a singular argument to the trial court and failed to differentiate between her respective constitutional claims at the suppression hearing.  See N.T. Suppression

---

[7] In this context, probable cause exists where "the facts and circumstances" within the knowledge of the officers provides "reasonably trustworthy information" that would warrant a "person of reasonable caution" in the belief that a search should be conducted.  See Commonwealth v. Jacoby, 170 A.3d 1065, 1081-82 (Pa. 2017).

Hearing, 10/12/17, at 31-36. However, Appellant's true complaint is not that the trial court ignored Appellant's Fourth Amendment claims altogether, but that her claims allegedly were evaluated under the wrong legal standard. See Appellant's brief at 23-24 n.1 ("[T]he Commonwealth was required to show that they had probable cause to conduct a canine sniff of the [h]otel here.").

Again, Appellant explicitly conceded any argument concerning a heightened legal standard at the suppression hearing. Id. at 31 ("Standard for that search is reasonable suspicion. It's not probable cause, but it requires reasonable suspicion." (emphasis added)). Thus, Appellant has waived that portion of her argument challenging the trial court's evaluation of her constitutional claims under the reasonable suspicion standard. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, we will review Appellant's constitutional claims consistent with the trial court's treatment of Appellant's arguments at the suppression hearing.[8]

_____

[8] Furthermore, we discern no clear legal error in the trial court's assessment of Appellant's claims under the legal standard of reasonable suspicion. Such an approach is consistent with existing case law interpreting both the Fourth Amendment and Article 1, § 8. See Rodriguez v. U.S., 575 U.S. 348, 356 (2015) (holding that officers must possess "reasonable suspicion" under the Fourth Amendment in order to conduct a canine sniff after the conclusion of a lawful traffic stop); Commonwealth v. Johnston, 530 A.2d 74, 79-80 (Pa. 1987) (holding police had to demonstrate "reasonable suspicion" in order to conduct a canine sniff of a hallway outside of the defendant's storage locker).

The Pennsylvania Supreme Court first recognized the use of a narcotics-sniffing dog as a limited search and seizure in Commonwealth v. Johnston, 530 A.2d 74, 79-80 (Pa. 1987).[9]  Specifically, this holding found the use of a narcotics-sniffing dog to be "inherently less intrusive upon an individual's privacy than other searches" because it is "unlikely to intrude except marginally upon innocent persons."  Id. at 79.  Thus, our Supreme Court

_____

Appellant's challenge to the trial court's analysis relies heavily upon the U.S. Supreme Court's holding in Florida v. Jardines, 569 U.S. 1, 5 (2013) (holding officers trespassing on a defendant's front porch to conduct a warrantless canine sniff lacked probable cause to invade the "curtilage" of the defendant's home).  In pertinent part, Appellant urges us to extrapolate the holding in Jardines to require that Pennsylvania officers possess probable cause to conduct a warrantless canine sniff of a hotel hallway.

Due to Appellant's waiver of this issue, we will not engage with the merits of Appellant's arguments.  However, Jardines was decided on narrow trespass grounds that do not appear to be applicable to the present circumstances.  Id at 11 ("[W]hen the government uses a physical intrusion to explore details of the home (including its curtilage), the antiquity of the tools that they bring along is irrelevant.").  We also note the diminished expectation of privacy Pennsylvania defendants enjoy in the common areas of joint dwellings.  See Reed, supra at 962, Murphy, supra at 1004.

[9]  Although Johnston remains good law, Pennsylvania precedent has since recognized that a dog sniff conducted upon a defendant's actual person must be supported by probable cause in order to pass constitutional muster.  See Commonwealth v. Martin, 626 A.2d 556, 560 (Pa. 1993) ("Because the search in this case involved [the defendant's] person, . . ., the police must have probable cause to believe that a canine search of a person will produce contraband or evidence of a crime.").  Taking these two cases together, our Supreme Court has opined that while reasonable suspicion is sufficient to conduct a canine sniff of a place, such justification is too low a level of suspicion when a person, rather than a place, is to be subjected to a canine sniff.  See Commonwealth v. Rogers, 849 A.2d 1185, 1190-91 (Pa. 2004).

concluded that detection dogs may be deployed to test for the presence of narcotics where the police are: (1) able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and (2) lawfully present in the place where the canine sniff is conducted.[10]  Id.

As noted above, we will evaluate Appellant's constitutional claims under the reasonable suspicion standard.  The trial court concluded the officers possessed reasonable suspicion, discussing the circumstances as follows:

> The hotel where Appellant and Mr. Lee were staying was known by the investigating officers to be frequently used for drug[-]related activity; Appellant and Mr. Lee, who was a known drug offender, gave conflicting descriptions of their relationship and the reasons for their use of the room; Mr. Lee was a frequent renter at the hotel and had a special rate, but the room in question was rented in Appellant's name alone, and, Appellant left the scene of the accident that was being investigated allegedly to use the bathroom before returning to the scene of the accident, . . . .

Trial Court Opinion, 6/24/19, at 7 (cleaned up).  Appellant argues these circumstances were insufficient to establish a reasonable likelihood that narcotics would be located in Appellant's hotel room.  We disagree.

The following guidance from our Supreme Court is helpful in framing our review of the trial court's findings:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct.  This standard, less stringent than probable cause, is commonly known as reasonable suspicion.  In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered.

---

[10]  There is no allegation in this case that the police were not "lawfully present" when they conducted the dog sniff.

> In making this determination, we must give due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

Commonwealth v. Rogers, 849 A.2d 1185, 1189 (Pa. 2004). In particular, we will focus on whether the officers "are able to articulate grounds for believing that drugs may be present in the place they seek to test." Accord Johnston, supra at 79.

The facts of Appellant's case are sufficiently analogous to those in Johnston. In that case, police observed individuals acting "furtively" and carrying suspicious packages out of a storage unit. Id. at 75. Based on these observations, officers conducted a warrantless canine sniff of the hallway abutting the defendant's storage unit after gaining access to the space from the business operators. Ultimately, our Supreme Court concluded that the officers possessed reasonable suspicion. In concluding that the search was proper, our Supreme Court focused upon the fact that the narcotics were "located near enough to a public hallway that a trained dog, standing in that hallway could identify the odor." Id.

As in Johnston, the officers in Appellant's case observed her coming and going from the subject location in a suspicious manner. While the officers did not observe her in physical possession of suspected narcotics, there were many other indicators of narcotics-related activity because of Appellant's

stated relationship with Mr. Lee.[11] The evidence at the suppression hearing established a number of reasonable bases for the officer's suspicions, to wit: (1) the significant dissonance in Appellant's and Mr. Lee's respective descriptions of their relationship; (2) Appellant's sudden departure from the crash site, and subsequent "frightened" behavior in the presence of officers; (3) the location of Appellant's hotel room in an establishment known for narcotics-related activity; and (4) Mr. Lee's prior convictions, regular business relationship with the Comfort Inn, and his possession of multiple cell phones and approximately $2,000 in U.S. currency. See N.T. Suppression Hearing, 10/12/17, at 6-10, 15-17, 21, 24, 27-28.

Viewing this evidence in the light most favorable to the Commonwealth, the trial court's assessments are supported by the record and free of legal error. Accord Johnston, supra at 75; see also Rogers, supra at 1190 ("[O]ne can conceive of innocent explanations for each of these facts. Yet, . . ., reasonable suspicion does not require that the activity in question must be

---

[11] As Appellant rented Room 315 in her name alone, she claims that any suspicions regarding Mr. Lee's conduct were not relevant with respect to this allegedly independent space. See Appellant's brief at 27 ("Mr. Lee's narcotics history did not create reason to believe that drugs would be found in [Appellant's] hotel room."). Officers testified, however, that Appellant told them that she was staying at the hotel with her boyfriend, and named Mr. Lee as her romantic partner. Moreover, Mr. Lee was a regular patron of the hotel. As such, it would be reasonable to infer that Mr. Lee had a salient connection to both the Comfort Inn, generally, and Appellant's hotel room, specifically. The trial court properly considered the above-referenced facts related to Mr. Lee in evaluating the officers' suspicion, which falls within the totality of the circumstances of the case.

unquestionably criminal before an officer may investigate further."). Based upon the foregoing discussion, no relief is due on Appellant's first issue.

Our adjudication of Appellant's first issue is also dispositive of her second claim. In relevant part, Appellant's second claim asserts that there was insufficient probable cause to support the search warrant issued for her hotel room. See Appellant's brief at 28-36. Appellant has predicated her argument upon the alleged illegality of the canine sniff in this case. See Appellant's brief at 28 ("The evidence used to secure the search warrant in question was illegally obtained; namely, the positive canine alert as to Room 315 at the Comfort Inn.").

However, the officers possessed reasonable suspicion that narcotics were present in Appellant's hotel room. Accordingly, the dog sniff in this case was lawful, which vitiates much of Appellant's argument. Moreover, our precedent indicates that the positive alert of the drug-sniffing dog was sufficient, in and of itself, to elevate the officers' reasonable suspicion to probable cause. See Commonwealth v. Green, 168 A.3d 180, 187 (Pa.Super. 2017) (holding that a dog's indication, alone, was sufficient to elevate an officer's reasonable suspicion to probable cause). Thus, Appellant's second issue is also without merit.

Appellant's third claim sounds in sufficiency and asserts that the Commonwealth did not present sufficient evidence at trial to support Appellant's convictions for possession of narcotics and paraphernalia. See

Appellant's brief at 41 ("None of the offered testimony provided any indication that [Appellant] had any knowledge the drugs were present inside Room 315, nor did it show that [Appellant] had any intent to express dominion or control over the contraband."). Again, we disagree.

In this context, "our standard of review is de novo, however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." Commonwealth v. Rushing, 99 A.3d 416, 420-21 (Pa. 2014). Appellant is challenging the sufficiency of the evidence underlying her convictions for so-called "possessory offenses." With respect to such crimes, the Commonwealth must establish "constructive possession" as to any contraband not found on a defendant's actual person. See Commonwealth v. Jones, 874 A.2d 108, 121 (Pa.Super. 2005). The following principles will guide our review:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Hopkins, 67 A.3d 817, 820 (Pa.Super. 2013). "Additionally, it is possible for two people to have joint constructive possession of an item of contraband." Id. at 820-21.

Appellant's substantive argument does not dispute the underlying factual evidence adduced by the Commonwealth at trial, which established that Appellant rented and used the hotel room where police discovered the at-issue items. See N.T. Trial, 9/18/18, at 73-76. In particular, the police discovered a digital scale, a large bag of crack cocaine, and plastic gloves. Specifically, officers found these items in a green Crown Royal bag discovered laying conspicuously in the middle of the floor of Appellant's hotel room. Id. at 56, 58, 89, 108-09. Despite renting and using the hotel room, Appellant argues that Mr. Lee's joint use of the hotel room should dispel any presumption of her constructive possession. See Appellant's brief at 37-38.

Pennsylvania law does not favor Appellant's argument. See, e.g., Commonwealth v. Carroll, 507 A.2d 819, 821 (Pa. 1986) (citing Commonwealth v. Macolino, 469 A.2d 132, 136 (Pa. 1983)). In Carroll, police seized several individually wrapped doses of heroin in the pocket of a pair of women's jeans during the execution of a search warrant in a hotel room. The hotel room was registered to and occupied by the defendant, his wife, and his stepdaughter. The family disclaimed knowledge of the drugs, and asserted that the jeans belonged to a third-party friend of the stepdaughter. Ultimately, the defendant was convicted of PWID under a theory of constructive possession.

Our Supreme Court upheld the judgment of sentence, holding that there was sufficient evidence to establish the defendant's constructive possession

despite his wife's alleged connections to the contraband and her joint access to the hotel room. Id. at 821 ("[C]onstructive possession may be inferred if the contraband is located in an area under the joint and exclusive control of the defendant and his spouse."); see also Macolino, supra at 136 ("[I]t was reasonable for the fact-finder to conclude that the [defendant] maintained a conscious dominion over the cocaine found in the bedroom closet which he shared solely with his wife.").[12]

We find Appellant's case analogous to Carroll. If believed, Appellant's averments demonstrate only that she and Mr. Lee had joint and exclusive control of the hotel room. See Appellant's brief at 40 ("[T]he only link between [Appellant] and the recovered [contraband] is that they were present in the room she rented and shared with Mr. Lee."). Much like the circumstances in Carroll, the contraband inside of Appellant's hotel room was secreted in such a way that ownership of the items was not definitive. However, Appellant's joint and exclusive control of the hotel room is all that Pennsylvania law requires in these circumstances to establish constructive possession. See Carroll, supra at 821 ("[J]oint control will not prevent a finding of constructive possession in one of the individuals . . . ."). Appellant

_____

[12] There is no indication that the holdings in Carroll and Macolino depended upon the privity of matrimony. Rather, both cases concerned these individuals' shared use of, and access to, the place contraband was located.

does not (and cannot) reasonably dispute exercising such dominion over the hotel room that she paid for and used.

Based on the foregoing discussion, we conclude that the totality of the circumstances established by the Commonwealth's evidence permitted a reasonable inference of Appellant's constructive possession. Accord Carroll, supra at 821-22. No relief is due on Appellant's third claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2020