J-S32035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD REYNOLDS | : | |
| | : | |
| Appellant | : | No. 408 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 1, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000444-2021

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED: JANUARY 3, 2024**

Appellant Edward Reynolds appeals from the judgment of sentence imposed following his conviction for possession of a firearm prohibited.[1] Appellant argues that the trial court erred in denying his motion to suppress. We affirm.

The trial court summarized the relevant facts in this matter as follows:

Officer Farida Kingsboro testified that she was working on July 30, 2020, when she came into contact with Appellant. She was patrolling her jurisdiction when she observed a male that appeared to be possibly unconscious on the stoop of a building located on the 100[] block of South 17th Street, at around 2:00 a.m. Officer Kingsboro waited for backup and when the second officer[, Officer Garrett Miller,] arrived, the two approached the individual. The individual awoke, and Officer Kinsgboro asked for his identification. As the individual, identified as Appellant, searched for his identification in a plastic bag, Officer Kingsboro saw what appeared to be the butt of a pistol in the bag. Officer

---

[1] 18 Pa.C.S. § 6105(a)(1).

Kingsboro shined her light on the bag and when she confirmed it was a gun, she quickly grabbed it as it was within close proximity to Appellant.

Trial Ct. Op., 4/27/23, at 2 (unpaginated) (citations to the record omitted).

Officer Kingsboro took Appellant's identification card to her patrol car, and she began "running [Appellant's] information to see if he had a conceal permit." N.T. Suppression Hr'g, 9/19/22, at 23. The trial court continued:

[Officer] Miller testified that he has been a police officer with Harrisburg City for 22 years. On July 30, 2020, he was Officer Kingsboro's backup, and he responded when she called out a subject stop. Officer Miller arrived at the scene in a marked police car and was in full uniform. The red and blue lights on Officer Miller's vehicle were activated when he arrived; however, he did not have his gun drawn. Officer Miller made conversation with Appellant while Officer Kingsboro returned to her police vehicle with Appellant's identification. Officer Miller testified that he asked where Appellant lived. At some point, Appellant "[w]as just rambling on about, you know, he found [the gun] and hope[d] there was no bodies on it and said maybe there was [sic] some cowboys on it[,] it was so old." [N.T., Suppression Hearing, 9/19/22, at 33.] Officer Miller did ask [Appellant] if the gun was a .22 [caliber] but did not ask any other questions about the gun.

Trial Ct. Op. at 3 (unnumbered)(formatting altered and some citations omitted).

After running Appellant's information, Officer Kingsboro learned that Appellant did not have a permit to carry a concealed firearm. *See* N.T., Suppression Hearing, 9/19/22, at 23-25, 28-29. Officer Kingsboro then walked back over to Appellant and Officer Miller, she asked Appellant what he was doing on the sidewalk and if he had ever been arrested, Appellant responded that he had been arrested before, and Officer Kingsboro read

Appellant his *Miranda*[2] warnings and placed him under arrest. Trial Ct. Op., 4/27/23, at 3-4 (unnumbered); *see also* N.T. Suppression Hr'g, 9/19/22, at 23-25, 28-29.

Appellant filed a pre-trial motion to suppress "any and all statements"[3] he made because Appellant was questioned during a custodial detention and the officers did not provide *Miranda* warnings. *See* Mot. to Suppress, 9/16/22, at 2-3. Immediately prior to trial, the trial court conducted a suppression hearing and denied Appellant's motion. *See* N.T. Suppression Hr'g, 9/19/22, at 45. Following trial, a jury convicted Appellant of possession of a firearm prohibited. *See* N.T. Trial, 9/19/22, at 160-61. The trial court subsequently sentenced Appellant to a term of seven and one-half to fifteen years of incarceration. Sentencing Order, 12/1/22.

Appellant filed a timely post-sentence motion, which the trial court denied. Appellant did not file a direct appeal, and on February 24, 2023, Appellant filed a timely petition pursuant to the Post Conviction Relief Act[4] (PCRA) requesting the reinstatement of his direct appeal rights. The trial court granted Appellant's PCRA petition and reinstated Appellant's direct appeal

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Appellant filed a motion to suppress only the statements he made to police, and he did not challenge the seizure of the firearm. *See* Mot. to Suppress, 9/16/22, at 2-3.

[4] 42 Pa.C.S. §§ 9541-9546.

rights *nunc pro tunc*. Appellant filed a timely appeal, and both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue:

Whether the trial court erred in holding that [Appellant] was only detained pursuant to an investigative detention, depriving him of the protection of ***Miranda***, when [Appellant] was not free to leave, and officers had seized a handgun prior to questioning him?

Appellant's Brief at 4.

Appellant argues that the trial court should have suppressed Appellant's statements to the police officers. Appellant's Brief at 11-12. Appellant contends that "[o]nce Officer Kingsboro seized [Appellant's] identification, as well as the firearm involved in this case, he was subject to custodial interrogation." ***Id.*** at 11. Appellant asserts that during this custodial interrogation, the police failed to provide ***Miranda*** warnings or inform Appellant of his constitutional rights, and he argues that he was "allowed to ramble by police and asked questions specifically about the firearm." ***Id.*** at 16-18. Appellant also contends that the order denying the motion to suppress was not harmless error. ***Id.*** at 19-21.

The Commonwealth responds that the police officers were not obligated to provide ***Miranda*** warnings until Officer Kingsboro placed Appellant under arrest because, until that point, Appellant was not subjected to a custodial detention. Commonwealth's Brief at 10. Specifically, the Commonwealth asserts that under the totality of the circumstances, Appellant's initial detention was not so coercive that it became the functional equivalent of an

- 4 -

arrest. *Id.* at 10-11. The Commonwealth notes that the police officers engaged Appellant in a mere encounter when they approached and asked for identification, Officer Kingsboro then saw the firearm in plain view while Appellant looked in his bag for identification, and Officer Kingsboro secured the weapon because of its proximity to Appellant. *Id.* It was not until Officer Kingsboro learned that Appellant did not possess a concealed-carry permit for the firearm that she placed him under arrest. *See id.* at 10. Moreover, the Commonwealth argues that Appellant's spontaneous statements regarding the firearm were not made in response to police questioning. *See id.* Finally, the Commonwealth contends that any hypothetical error was harmless because the Commonwealth established Appellant's possession of the firearm beyond a reasonable doubt even without Appellant's statement. *See id.* at 11. The Commonwealth notes that Officer Kingsboro found the firearm in the bag where Appellant carried his identification, and therefore, the Commonwealth proved at least constructive possession of the gun. *See id.*

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). Our scope of review "is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Barnes*, 296 A.3d 52, 55 (Pa. Super. 2023) (citing *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013)).

Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa. Super. 2018) (citation omitted).

Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Green***, 168 A.3d 180, 184 (Pa. Super. 2017) (citation omitted). To conclude that an officer possessed reasonable suspicion, the officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." ***Commonwealth v. Carter***, 105 A.3d 765, 768-69 (Pa. Super. 2014) (*en banc*) (citation omitted).

Further, a mere encounter escalates into an investigative detention where there is an investigation that causes the subject to believe that he is not free to leave. ***See Commonwealth v. Au***, 42 A.3d 1002, 1005 (Pa. 2012).

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement in some way has been restrained. In making this determination, courts must apply the totality-of-the circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa. Super. 2012) (citation omitted). Moreover, "[a]n investigative detention may develop into a custodial detention." ***Barnes***, 296 A.3d at 59. "The key difference between an investigative and a custodial detention is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest. This Court considers the totality of circumstances to determine if an encounter is investigatory or custodial." ***Id.*** (citations omitted).

The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Id.* (citations omitted).

Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of *Miranda* rights. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Thus, interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. In evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances.

Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of his freedom of action in any significant way[,] or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted.

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest. Thus, the ultimate inquiry for determining whether an individual is in custody for *Miranda* purposes is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

***Commonwealth v. Sloan***, 303 A.3d 155, 167 (Pa. Super. 2023) (quoting

***Commonwealth v. Gonzalez***, 979 A.2d 879, 887-88 (Pa. Super. 2009))

(citations omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

Here, at the close of the testimony, the [trial] court found that on the date in question, Officer Kingsboro stopped to check on an individual she observed sleeping on the stoop at 2 a.m. When backup arrived, the officers approached the individual (who was ultimately identified as Appellant). While initially sluggish and confused, Appellant did not appear to be intoxicated to any point where he did not understand what was going on. Appellant interacted with Officers Kingsboro and Miller and was compliant and cooperative during the brief encounter. Appellant provided his identification to Officer Kingsboro, and she then observed a gun and took it into custody.

During this time, Appellant and Officer Miller had a casual conversation about where Appellant lives. Appellant then segued into a conversation about the gun and the only question asked by Officer Miller was what caliber the gun was. When Officer Kingsboro returns, she asked Appellant whether he has ever been arrested. The court found at this point Appellant was being detained, was not free to leave, and no reasonable person under the circumstances would believe they were free to leave, nor did Appellant attempt to leave. However, the court further found that a custodial interrogation did not take place. The conversation that took place between the officers and Appellant was routine in nature, asking him where he lived, whether he had been arrested, and what caliber the gun was. The court opined that this line of questioning did not rise to any level of custodial interrogation and denied the motion to suppress.

\* \* \*

In the instant matter, the contact between the officers and Appellant was initiated by Officer Kingsboro's observation of an individual, who she believed might be unconscious, on the stoop of a building at 2:00 a.m. Officer Kingsboro did not activate her police lights or siren, nor did she or Officer Miller draw their weapons. As she and Officer Miller approached the individual, he

awoke, and Officer Kingsboro asked to see identification. None of the evidence presented indicated that the officers were acting in an aggressive or intimidating manner. There was nothing to suggest that failure to produce the identification would result in a consequence to Appellant. Neither officer told Appellant that he was not free to leave, and he was not physically restrained, preventing him from leaving. To the contrary, the encounter was described as relaxed and casual.

* * *

While Officer Miller acknowledged that he asked Appellant where he lived, this inquiry does not rise to the level of a custodial interrogation. Further, Appellant, of his own volition, brought up the gun and that he had found it. In effect, he volunteered that statement. As such, *Miranda* was not required. Given the time of night and the fact that Appellant was possibly unconscious on the stoop of a building in a high crime area, it was not unreasonable for the officers to approach Appellant and ask for identification. . . .

Trial Ct. Op. at 4-5; 6-7 (unnumbered)(formatting altered and citations omitted).

After review, we conclude that under the totality of the circumstances, the trial court's findings are supported by the record, and without legal error, therefore the trial court did not err in denying Appellant's motion to suppress. *See Jones*, 988 A.2d at 654; *see also Green*, 168 A.3d at 184.

As stated, Officer Kingsboro testified that it was 2:00 a.m. in a high crime area when police saw Appellant, who appeared to be unconscious on a building stoop. *See* N.T. Suppression Hr'g, 9/19/22, at 17. When Officer Kingsboro initially approached Appellant and asked for identification, the interaction was a mere encounter, which required no level of suspicion and

carried no official compulsion to stop or respond. *See McAdoo*, 46 A.3d at 784.

During the initial mere encounter and request for identification, Officer Kingsboro saw that Appellant had a firearm in his bag. *See* N.T., Suppression Hr'g, 9/19/22, at 19-23. After Officer Kingsboro secured the firearm and obtained Appellant's identification, she walked back to her car to determine if Appellant had a permit to carry the firearm. *Id.* at 20, 23, 28. At that point, we agree with the trial court that the mere encounter escalated into an investigative detention because, under these facts, a reasonable person would not have felt free to leave. *See McAdoo*, 46 A.3d at 784; *see also Commonwealth v. Cost*, 224 A.3d 641, 651 (Pa. 2020) (stating that in determining whether there was an investigative detention, "retention by police of an identification card to conduct a warrant check will generally be a material and substantial escalating factor within the totality assessment").

Further, on this record, we agree with the trial court that there was reasonable suspicion to support the investigative detention. *See McAdoo*, 46 A.3d at 784. Officer Kingsboro testified that she encountered Appellant in a high crime area at 2:00 a.m., at which time she observed a concealed firearm in Appellant's open bag. Accordingly, based on the totality of these circumstances,[5] we conclude that Officer Kingsboro, articulated specific

_____

[5] We are cognizant that possession of a firearm alone is not sufficient to create reasonable suspicion; however, it is a factor to be considered when
*(Footnote Continued Next Page)*

observations from which she drew reasonable inferences based on her law enforcement training and experience, that criminal activity was afoot. *See Green*, 168 A.3d at 184.

Finally, we agree with the trial court that Appellant was not subject to a custodial interrogation. As noted previously, Officer Kingsboro checked on Appellant's welfare because he appeared to be unconscious on a city street at 2:00 A.M. and ultimately discovered that Appellant had a gun. *See* N.T., Suppression Hr'g, 9/19/22, at 19-20. Additionally, the conversation that took place between the officers and Appellant was routine and included questions concerning where Appellant lived, whether he had been arrested, and what caliber the gun was. *See* Trial Ct. Op. at 5. Further, the detention was for investigative purposes, was not coercive or lengthy, did not involve any physical restraint or use of force, and did not involve transporting Appellant to a separate location for questioning. *See Barnes*, 296 A.3d at 59. Based on the totality of these circumstances, we agree with the trial court that because Appellant made statements to police during an investigative detention, no *Miranda* warnings were required. *See Sloan*, 303 A.3d at 167.

_____

determining whether there is reasonable suspicion based on the totality of the circumstances. *See Commonwealth v. Smith*, 285 A.3d 328, 331 n.4 (Pa. Super. 2022); *see also Commonwealth v. Hicks*, 208 A.3d 916, 938-39 (Pa. 2019) (providing that law enforcement officers may consider contextual factors, such as one's presence in a high crime area, to reasonably suspect that a person's possession of a firearm is unlawful).

On this record, we discern no error by the trial court in denying Appellant's suppression motion.[6]   For these reasons, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/03/2024

---

[6] In light of our conclusion, we need not address Appellant's claim that the trial court's error was not harmless error.